THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE SANTIAGO, Defendant-Appellant.

First District (1st Division)   No. 1—94—3961

Opinion filed April 15, 1996.

Rita A. Fry, Public Defender, of Chicago (Dennis E. Urban, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, LaTisha Foster, and Frank J. Andreou, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Something puzzling, unexplained, and, thankfully, rare happened in this otherwise mundane armed robbery case: the information named the wrong victim and no one in the trial court seemed to have noticed.

Defendant Jose Santiago (Santiago) seeks reversal of his armed robbery conviction. He contends there was a fatal variance between the allegations in the charging instrument and the proof at trial. His contention is based on the undisputed fact that the information identified the wrong person as the victim of the offense charged. We affirm his conviction.

## FACTS

Santiago was arrested on February 18, 1994, after Teodulo Rodriquez pointed Santiago out to a police officer as one of two men who had robbed him at gunpoint at 1658 N. Karlov in Chicago on February 12, 1994. The police report and original complaint clearly state that the victim-complainant was Teodulo Rodriquez.

Information No. 94 CR 6222, dated February 28, 1994, however,

charged Jose Santiago with committing the offense of armed robbery on February 12, 1994, in Cook County, Illinois, in that:

"He, by use of force and threatening the imminent use of force while armed with a dangerous weapon, to wit: a revolver handgun, took United States currency and wallet from the person of *ALFREDO JIMENEZ*, in violation of the Illinois Revised Statutes 1989 as amended ***." (Emphasis added.)

Alfredo Jimenez was the manager of the Jimenez Meat Market where defendant sometimes worked. Although Jimenez was a State witness, he was not the victim of the robbery, nor was he present when the robbery took place. He was called by the State to contradict the defendant's claim of being in the meat market at the time of the armed robbery. He knew nothing about the robbery.

On August 25, 1994, defendant, represented by counsel, proceeded to a bench trial. Inexplicably, the variance in the victim's name in the charging instrument was not raised at trial, nor was it brought to the attention of the court in a post-trial motion.

There is nothing in the record to suggest (nor does the State allege on appeal) that the information was amended prior to trial. We note, however, that the trial judge, when admonishing Santiago with regard to his jury waiver, made the following statement:

"All right. Mr. Santiago, I have a copy of the information which alleges that on or about February 12th, 1994, in Cook County, Illinois, Jose Santiago committed the offense of armed robbery in that he, by use of force and by threatening the imminent use of force, while armed with a dangerous weapon; to wit: A revolver, handgun, took property from *Teodulo Rodriguez*.

Do you understand that charge, sir?" (Emphasis added.)

At trial Teodulo Rodriquez testified that his wallet and money had been taken by Santiago and an unidentified gunman on February 12, 1994, as Rodriquez walked along the street near 1658 N. Karlov in Chicago.

The defendant was found guilty and sentenced to eight years in the Illinois Department of Corrections.

## OPINION

The only issue before us is whether the variance in the charging instrument, raised for the first time on appeal, requires reversal of defendant's armed robbery conviction.

Section 18—2 of the Criminal Code of 1961 provides that a person commits an armed robbery when he or she intentionally takes property from another by use of force or by threatening the imminent use of force, while carrying on or about his or her person or otherwise

armed with a dangerous weapon. 720 ILCS 5/18—2 (West 1992). The *"essential elements"* of armed robbery are the taking of property by force or threat of force. "Nothing more is required to sustain the conviction." (Emphasis in original.) *People v. Lewis*, 165 Ill. 2d 305, 340, 651 N.E.2d 72 (1995).

In *People v. Jones*, 53 Ill. 2d 460, 292 N.E.2d 361 (1973), the court held that the identity of the armed robbery victim was an essential allegation in the instrument charging the offense. But the court went on to find that the misstatement of the identity of the victim was a "formal defect."

■ Formal defects may be amended at any time on the motion of the State's Attorney or the defendant if there is no resulting surprise or prejudice to the defendant. 725 ILCS 5/111—5 (West 1992). See also *People v. Wallace*, 210 Ill. App. 3d 325, 568 N.E.2d 1332 (1991) (armed robbery indictment could be amended on second day of trial to correct "miswriting" the names of the robbery victims).

■ To date, the State has not requested that the information be amended. The variance in the charging instrument is being attacked by the defendant for the first time on appeal. Under these circumstances, a charging instrument will be held sufficient "if it 'apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecutions arising out of the same conduct.' " *People v. Benitez*, 169 Ill. 2d 245, 257, 661 N.E.2d 344 (1996), quoting *People v. Gilmore*, 63 Ill. 2d 23, 29, 344 N.E.2d 456 (1976).

To be fatal, a variance between the charging document and the proof at trial " 'must be material *and* be of such character as may mislead the accused in making his defense or expose him to double jeopardy.' " (Emphasis added.) *People v. Davis*, 82 Ill. 2d 534, 539, 413 N.E.2d 413 (1980), quoting *People v. Figgers*, 23 Ill. 2d 516, 518-19, 179 N.E.2d 626 (1962).

This was the standard used in *People v. Montgomery*, 96 Ill. App. 3d 994, 422 N.E.2d 226 (1981). In *Montgomery*, the defendant was charged with the aggravated assault of Officer Romano. At trial, however, the evidence was that the defendant had pointed a gun at Officer Crescenti. There was no evidence that Officer Romano had been placed in reasonable apprehension of a battery, since Officer Romano had not seen the gun until it was recovered. Montgomery raised the variance between the pleading and the proofs for the first time on appeal.

On review, the *Montgomery* court examined the defense presented by the defendant to determine whether there was evidence that the defendant had been prejudiced by the variance. The court found:

"Montgomery's defense was not that he did not assault Officer Romano. Instead he denied assaulting any officer with a gun. Had the complaint charged that the defendant assaulted Officer Crescenti rather than Officer Romano, his defense would have remained unchanged." 96 Ill. App. 3d at 998.

■ This case is slightly different. The information names as the victim someone who was not even present at the time of the incident. Still, the question should remain the same, that is, whether the defendant was prejudiced in the preparation of his defense by the inaccurate naming of the victim. He has never claimed prejudice, nor does the record support a finding that he was prejudiced.

The police report and the initial complaint both listed Rodriquez as the victim-complainant. At the commencement of trial the trial judge read the charge against him, stating that the victim was Teodulo Rodriquez. Santiago expressed no surprise. (Why the trial judge read the name of the correct victim, not the victim named in the information, is an unsolved mystery.)

Trial proceeded with Santiago presenting a defense in which he denied any involvement in the armed robbery. Santiago testified that he had been working at the Jimenez Meat Market at the time the offense took place. Santiago did not complain that he was surprised or misled by the information.

Further evidence that Santiago was not surprised or misled by the variance was revealed during arguments at the hearing on his motion for new trial. Santiago's counsel argued:

"It's our position clearly that Mr. *Rodriquez* was robbed. And he wanted desperately to find the person who had done it. And by our misfortune he found Mr. Santiago." (Emphasis added.)

Santiago's theory at every stage of the proceedings was that he was the victim of mistaken identity by Rodriquez. Even now on appeal, Santiago does not claim that he was surprised or prejudiced by the misnomer in the information. He never has said the variance hindered the preparation of his defense.

Santiago does not risk exposure to double jeopardy. The information set out the charged offense, as well as the time, place, and date the offense took place. The record contains the police report and initial complaint, both of which named Rodriquez as the victim-complainant.

There was a time when a charging document defined the limits of jeopardy, but that time "has passed and a prior prosecution on the same facts may be proved by resort to the record." *People v. Gilmore*, 63 Ill. 2d 23, 30, 344 N.E.2d 456 (1976). By using the trial transcript and by referring to the record, Santiago would be able to use this

conviction as a bar to any future prosecution. *People v. DiLorenzo*, 169 Ill. 2d 318 (1996); *Montgomery*, 96 Ill. App. 3d at 998-99.

There is an inexcusable variance in this case, but it is not fatal. The conviction survives.

This resolution reflects a "liberalization of criminal pleading," which recognizes that the indictment is "far overshadowed by the array of discovery procedures" as a means of informing defendants of the particulars of a case. *People v. Wallace*, 210 Ill. App. 3d 325, 338, 568 N.E.2d 1332 (1991) ("It is evident that the trial transcript and other documents of record would provide adequate protection against double jeopardy").

The right defendant was tried for the right armed robbery. It would be an exercise in pointless formalism for us to reverse this conviction under these circumstances.

CONCLUSION

We affirm the defendant's conviction for armed robbery.

Affirmed.

CAMPBELL, P.J., and BRADEN, J., concur.