This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39941**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**ERNESTO JUAN MARTINEZ,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Defendant Ernesto Juan Martinez appeals his convictions for tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003), and possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(A), (E) (2021).[1] In relevant part, Defendant argues that his convictions are not supported by sufficient

---

[1]Section 30-31-23 has been amended since Defendant's charges, but we cite the current amended version of the statute here given that the amendments did not affect the relevant language.

evidence and the district court's failure to provide a definitional instruction constitutes fundamental error. For the reasons that follow, we affirm in part and reverse in part.

## DISCUSSION

**{2}** This appeal arose from an incident in which a corrections officer, Officer Lopez, conducted a search of Defendant at the Curry County Adult Detention Center. During the search, Officer Lopez asked Defendant to remove his socks, and although Defendant removed his right sock, he hesitated in removing his left sock. When Defendant ultimately removed his left sock, a baggie filled with a substance later identified as methamphetamine appeared to fall to the floor. Defendant then picked the baggie up, threw it in the toilet, and attempted to flush the toilet. Officer Lopez was able to retrieve the baggie from the toilet and observe the substance inside. The State subsequently charged Defendant with trafficking and tampering with evidence, but later amended such charges to possession of a controlled substance and tampering with evidence. Following a jury trial, Defendant was found guilty on both counts. This appeal followed.

**{3}** Defendant argues that his tampering with evidence and possession of a controlled substance convictions are not supported by sufficient evidence. Specifically, as to his tampering with evidence conviction, Defendant contends that he merely attempted to tamper with evidence but did not actually do so, given that his attempt to hide or otherwise dispose of the baggie by throwing it in the toilet was conducted in plain view of Officer Lopez who was immediately able to retrieve the baggie. Regarding his possession of a controlled substance conviction, Defendant further asserts that the district court's failure to instruct the jury as to the definition of possession constitutes fundamental error and that his convictions violate his right to be free from double jeopardy. We address these arguments in turn.

## I.      Sufficiency of the Evidence

**{4}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "We disregard all evidence and inferences that support a different result." *State v. Telles*, 2019-NMCA-039, ¶ 16, 446 P.3d 1194. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (text only) (citation omitted).

## A.      Tampering With Evidence

**{5}** Our Supreme Court has stated that "in order for [a d]efendant's conviction on tampering with evidence to be upheld, there must be sufficient evidence from which the jury can infer: (1) the specific intent of the [d]efendant to disrupt the police investigation; and (2) that [the d]efendant actively destroyed or hid physical evidence." *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515 (internal quotation marks omitted). Under Section 30-22-5(A), "[t]ampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." Here, the jury was instructed that the State must prove the following elements:

1.  [D]efendant threw a package of methamphetamine into a toilet;

2.  By doing so, [D]efendant intended to prevent the apprehension, prosecution, or conviction of himself for the crime of [p]ossession of [a controlled substance.]

These instructions mirror those provided to the jury in *State v. Jackson*, 2021-NMCA-059, ¶ 6, 497 P.3d 1208. In *Jackson*, as here, we addressed whether the defendant's conviction of tampering with evidence was supported by sufficient evidence. *Id.* ¶ 6-9. The defendant's conviction in *Jackson* arose from a traffic stop during which the defendant removed a baggie of cocaine from his pants and, in view of police officers, threw the baggie into the stopped vehicle. *Id.* ¶ 4. The baggie was ultimately retrieved by officers during a search of the vehicle. *Id.* We clarified in *Jackson* that Section 30-22-5 "makes it a crime to hide or alter evidence of a crime," and that the statute "punishes those who try to frustrate the criminal justice system by *obstructing access* to evidence of a crime." *Id.* ¶ 7 (emphasis added) (internal quotation marks and citation omitted); *see also State v. Radosevich*, 2018-NMSC-028, ¶ 10, 419 P.3d 176. Noting the distinction "[o]ur courts have drawn . . . between acts occurring in the presence of an officer and those that attempted to conceal evidence outside of the view of an officer," we explained in *Jackson* that because the defendant's actions were witnessed directly by law enforcement and the evidence in question was immediately recovered, the evidence was never actually concealed from law enforcement and the defendant had therefore not obstructed access to evidence of a crime. 2021-NMCA-059, ¶¶ 8-9. Accordingly, we held that the defendant's conviction for tampering with evidence was not supported by sufficient evidence and reversed the conviction. *Id.* ¶¶ 8-9, 25.

**{6}** Here, Defendant's action of throwing the baggie into the toilet was witnessed by Officer Lopez, who was able to immediately retrieve the baggie. Defendant contends that under such facts, as in *Jackson*, there is insufficient evidence to support a finding that he concealed evidence from law enforcement or that he obstructed access to evidence of a crime because Officer Lopez witnessed Defendant throwing the baggie and immediately retrieved the baggie after Defendant threw it. The State argues that, under *State v. Garcia*, 2011-NMSC-003, ¶¶ 13-14, 149 N.M. 185, 246 P.3d 1057, when a tampering conviction is based on concealing evidence, conviction is not predicated on actual recovery of the evidence, contending that it is inconsequential that the baggie

was recovered by the officer in this case. We are unpersuaded by the State's argument in this regard, given that both here and in *Jackson*, and unlike in *Garcia*, the attempts to conceal evidence occurred in plain view of law enforcement—a pivotal fact under relevant precedent. *See Jackson*, 2021-NMCA-059, ¶¶ 8-9; *Garcia*, 2011-NMSC-003, ¶¶ 13-14 (affirming a conviction of tampering with evidence when none of the defendant's acts were committed in front of police). We agree with Defendant that, under the particular facts of this case, his conviction for tampering with evidence—which would require proof that Defendant concealed evidence and obstructed access thereto—is not supported by sufficient evidence and reverse such conviction. Because we reverse Defendant's tampering with evidence conviction, we need not address his argument regarding double jeopardy.

## B.      Possession of a Controlled Substance

**{7}**      In arguing that his conviction for possession of a controlled substance is not supported by sufficient evidence, Defendant asserts that the State was required to establish "intentional" possession rather than "passing" possession. Citing the parties' disputes over whether Defendant actually physically possessed the baggie of methamphetamine before he threw it into the toilet, Defendant asserts the State did not prove that Defendant intentionally possessed the baggie and instead only proved that he had passing possession of it while throwing it. Defendant contends that because the officer "did not see where the baggie came from and there were three inmates in the cell," in addition to Defendant, "there was insufficient evidence of actual possession prior to" the moment when Defendant threw the baggie in the toilet. Defendant asks that we conclude, as a matter of first impression, "that New Mexico law requires more than passing possession solely for purposes of discarding contraband in order to carry criminal liability." For the following reasons, we decline to do so.

**{8}**      Under Section 30-31-23, "[i]t is unlawful for a person intentionally to possess a controlled substance unless the substance was obtained pursuant to a valid prescription or order of a practitioner while acting in the course of professional practice or except as otherwise authorized by the Controlled Substances Act." Here, the jury was instructed that, in order to find Defendant guilty of possession of a controlled substance, the State must prove Defendant "had methamphetamine in his possession" and that he "knew it was methamphetamine." The jury was further instructed that the State must also prove that Defendant "acted intentionally when he committed the crime" of possession of a controlled substance. The intent instruction further stated:

> [a] person acts intentionally when he purposely does an act which the law declares to be a crime even though he may not know that this act is unlawful. Whether [D]efendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him.

We note that neither the statute nor the provided jury instructions implicate Defendant's assertion that the crime of possession is dependent on whether a person only

temporarily possesses a controlled substance for purposes of discarding said substance. Indeed, Section 30-31-23 makes clear that any possession of a controlled substance obtained without a prescription or other order constitutes a crime. Likewise, the provided instructions merely require jurors to determine whether Defendant intentionally and knowingly had methamphetamine in his possession.

{9}     Here, the jury heard from Officer Lopez that after Defendant removed one sock, he did not want to remove the other, and that Officer Lopez saw Defendant "grab his, or move his foot to the side and try to keep it right there, and [Officer Lopez] told him to pick up his foot. He didn't want to. And at the time I got him to move his foot, he bent over, grabbed [the baggie,] and threw it in the toilet and tried to flush it." Officer Lopez further testified that after Defendant hesitated to remove his second sock, Officer Lopez saw "something fall." From these facts, the jury could have reasonably inferred that Defendant had methamphetamine in his possession—evinced by Officer Lopez's testimony that the baggie appeared to fall from Defendant as he removed the second sock, indicating that the baggie had been inside the sock, and thus in Defendant's possession, prior to the search—and that Defendant knew the substance he possessed was methamphetamine—evinced by Defendant's hesitation to remove his second sock and his attempt to get rid of the baggie by throwing it in the toilet, which could reasonably be inferred as Defendant's consciousness of guilt. *See State v. Garcia*, 2005-NMSC-017, ¶¶ 5, 15, 138 N.M. 1, 116 P.3d 72 (concluding that, where a defendant was convicted of being a felon in possession of a firearm, the jury could have reasonably inferred that the defendant had knowledge of the firearm based on what the jury perceived to be the defendant's consciousness of guilt).

{10}     An axiomatic principle of appellate review is that "[w]e do not reweigh the evidence or substitute our judgment for that of the fact-finder as long as there is sufficient evidence to support the verdict." *State v. Garcia*, 2022-NMCA-008, ¶ 9, 504 P.3d 567 (alterations, internal quotation marks, and citation omitted), *cert. denied* (S-1-SC-39085, Jan. 6, 2022). Further, and particularly relevant to Defendant's argument regarding the intent element of possession of a controlled substance, we emphasize that the question of a defendant's "knowledge or intent generally presents a question of fact for a jury to decide." *State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820. Because knowledge, like intent, "can rarely be proved directly[, it] often is proved by circumstantial evidence." *State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495. We conclude based on the evidence presented that the jury could have reasonably inferred that Defendant knowingly possessed methamphetamine, and we therefore discern no error in the verdict below as to this charge.

## II.     Instructional Issue Regarding Possession of a Controlled Substance

{11}     Defendant argues that the district court failed to instruct the jury as to the definition of "possession." Specifically, Defendant contends that because possession was a disputed element, the jury should have been instructed as to both actual and constructive possession in a definitional instruction, UJI 14-3130 NMRA. Where, as here, a defendant asserts error based on the district court's failure to provide a

definitional instruction that was neither requested nor provided, we review for fundamental error. *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("Because [the d]efendant failed to preserve any error with respect to the definition of possession, we review only for fundamental error."). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *Id.*

**{12}**    In *Barber*, our Supreme Court concluded that a missing definition instruction clarifying the meaning of possession did "not implicate a critical determination akin to a missing elements instruction," which would ordinarily constitute fundamental error, whether or not the defendant objected to the missing elements instruction. *Id.* ¶¶ 20, 26 (internal quotation marks and citation omitted). The *Barber* Court stated that even though a definitional instruction was not provided, and the "the jury was [therefore] not instructed that it must find [the d]efendant had both knowledge and control over the drugs, no distinct possibility exists from the evidence that the jury convicted [the d]efendant without finding all the elements beyond a reasonable doubt." *Id.* ¶ 26. The Court further clarified that in order "[t]o prove either actual or constructive possession, the State had to show [that the d]efendant had both knowledge and control of the illegal drugs." *Id.* ¶ 27. "Evidence of control includes the power to produce or dispose of the narcotic." *Id.* "Proof of possession in controlled substances cases may be established by evidence of the conduct and actions of a defendant, and by circumstantial evidence connecting [the] defendant with the crime." *Id.*

**{13}**    Under a fundamental error standard, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citation omitted). As stated above, the jury here was instructed that in order to find Defendant guilty of possession, the State must prove that Defendant "had methamphetamine in his possession" and that he "knew it was methamphetamine." Under *Barber,* proof of either constructive or actual possession requires a jury to find that a defendant has both knowledge and control over the substance at issue. 2004-NMSC-019, ¶ 27. Here, because the jury was explicitly instructed as to Defendant's requisite knowledge of the controlled substance, our analysis hinges on whether the jury would have been reasonably able to infer Defendant's control over the substance without being confused or misled by the provided instruction. *See Benally*, 2001-NMSC-033, ¶ 12; *see also Barber*, 2004-NMSC-019, ¶ 27.

**{14}**    In *Barber*, the Court relied on a single fact—that a business card similar to other cards in the defendant's wallet was found on the toilet where methamphetamine was located—to determine the jury would not have been confused or misled by a missing definitional instruction as to possession. 2004-NMSC-019, ¶¶ 3-6, 28. The Court clarified that "[w]hile possession may not be proven by proximity alone, the evidence elicited at trial demonstrates far more than" mere proximity. *Id.* ¶ 28. The Court stated that the business card,

among other pieces of evidence, persuades us that there is no reasonable likelihood that the jury was confused, or confused enough to convict on proximity alone. To the contrary, we are satisfied that the jury convicted Defendant because of what he likely did and was planning to do with the drugs while they were in his presence. In so doing, the jury correctly followed the instructions, drew reasonable inferences from the evidence, and showed no likelihood of any material confusion of the kind that would place in doubt whether the jury actually found the essential elements of the crime.

*Id.* ¶ 28. Here, too, we conclude that testimony of seeing the baggie fall after Defendant was reluctant to remove the second sock—from which a jury could reasonably infer that Defendant had been storing the baggie in his sock prior to the search—as well as Defendant's subsequent attempt to throw the baggie in the toilet, persuades us that there is no reasonable likelihood that the jury was confused as to Defendant's control over the baggie or that the jury convicted Defendant based on mere proximity to the baggie. Moreover, because we review this issue for fundamental error, we cannot conclude that a missing definitional instruction for possession in these circumstances could result in the type of miscarriage of justice the fundamental error standard seeks to avoid. *See id.* ¶ 8. Rather, we conclude that based on the evidence presented, the jury could properly infer Defendant's actual possession—and both knowledge and control—of the baggie of methamphetamine, and the district court's failure to sua sponte instruct the jury as to the definition of possession does not constitute fundamental error.

## CONCLUSION

**{15}** For the above reasons, we reverse Defendant's conviction for tampering with evidence and remand for further proceedings consistent with this opinion. We otherwise affirm the judgment below.

**{16}   IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**